163936, Richard Slorp v. Lerner Sampson and Rothfuss et al. Arguments not to exceed 15 minutes per side. Mr. Doucette, court appellant. Thank you. Thank you, Your Honors. My name is Troy Doucette, representing the appellant Mr. Slorp. I request five minutes for rebuttal, please. Fine. Thank you. First, I'd like to thank the panel for its decision in the initial Slorp case. I know we've got some complex law that we're dealing with here, but that particular decision, especially in correcting the mortgage assignment issue with Livonia Properties, has had a very positive impact on our state court level, at least within Franklin County, clarifying a homeowner's position in that regard. I think the complexities associated with the case in general are where things get bogged down a little bit with this particular case. I think that if we look at the factual issues separately and first, there's a little bit more clarity with what's going on. From an evidentiary or factual standpoint, there's really no dispute between anybody that an allonge was created, that an allonge was attached to a note, that a note was attached to an affidavit, which was filed in support of summary judgment, and that summary judgment was granted, in part because of the evidence submitted in support of the affidavit, which is the allonge and the note, and that there's no dispute today that that was false, that that document was false. There's the affidavit as well, because the evidence that- When you say that document was false, what document? The allonge. The allonge to the note was false. And there's really no disputing, there is no dispute on that. What we get into with the arguments and the complexity is whether or not the original note was in a different form years ago and it had some endorsements on it instead. The facts, though, as it pertains to the foreclosure that was filed against our client, that summary judgment was granted, that was predicated upon a note with no endorsements on the back, an allonge attached to it that was purported to be firmly affixed, with an affidavit swearing that that document was true and accurate of the original, and that was not true. That was all false. The way that we know that it's false is because the allonge had to have, under Ohio law, had to have been physically and firmly attached to the original note, and it wasn't, because the note was over in California in a vault, and the allonge was created by counsel, sent over to Bank of America, and then it came back signed, which was then attached to the affidavit. I mean, the key idea here is whether BAC can foreclose, right? Yes. Given our prior opinion. Yes. And you're saying BAC didn't hold the note at that point? That is the evidence presented to the court. That's exactly right. Okay. So who held the note? That is the million-dollar question. The answer, as it pertains to the evidence before the court, is Countrywide Bank FSB, because that is the entity on the note who could foreclose, because the allonge is out and there are no endorsements. So the answer to your question, as it pertained to the foreclosure, was Countrywide, not BAC Home Loan Servicing LP. Now, Countrywide later merges with Bank of America, and Bank of America later purchases BAC, so that's how we get to this confusion where there's a lot of references to Bank of America in the district court. But that merger or that acquisition of BAC happened after this foreclosure was filed. So once the allonge is stripped out, because it has to be, and there's no disputing that, then you're just left with a note that only is made to Countrywide Bank. I thought MERS was involved in it. Yes, sure. Okay. So why hasn't that solved the problem? That's a very good question. So MERS is dealing with a mortgage. The note is first the financial obligation. It's a promise to pay. It's the thing that you have to have in place in order to file a foreclosure. Do you have to have both to foreclose? You do, yes. You have to show a dispute under the note, because the note's the same as a regular contract. It's the same if I loan somebody money, I don't pay them, they can sue me, but they can't take my house. They need the mortgage in order to take the house, so that's where MERS comes into play, his ability to take the house. Walk me through the points you are making in terms of the evidence you submitted in support of your position with respect to the summary judgment motion. I mean, you just said a lot of stuff, and a lot of it is conclusions, but it can't just be your conclusions. It's got to be an evidentiary basis. Walk me through where we are to find the various pieces of evidence that would support the conclusions that you have just offered us. I love that question. I appreciate it quite a bit. Well, you don't have to love it. You just have to answer it, please. Well, the exact sites are going to be in our brief. You'll be able to go through point by point. Here are some main points. The Allonge, the deposition of Bank of America's corporate representative, he says in there, and this is cited in our brief as well, that it is impossible for that note, that Allonge, to have been attached to the note at any point. So I know immediately, just by that deposition, not to mention the actual logs that the Bank of America logs. Who's the representative you're referring to? I don't have his name here. I know we cite to it, though. Why do we care whether it's impossible for the Allonge to be attached to the note? Because once the Allonge is impossible, then the entity that's able to foreclose becomes Countrywide. And Countrywide wasn't the plaintiff, which goes to, then the whole lawsuit was predicated upon it shouldn't have been filed. The wrong party filed the foreclosures, the answer to that question. That's because of a defect in the note. That's correct. Why is it that you can't foreclose with just a mortgage? Because a mortgage is incidental to the note. So first you have to have a financial obligation. You have to have a default under the note before you can take the house. It's just the way it is. But, I mean, I'm asking why you have to hold the note. You've got the mortgage. You have information there's been someone's not paying what's owed. Why can't you foreclose? Well, the mortgage is a lien. It's just a lien. No, it's just a lien. It's really beautiful when you can exercise it. It becomes your property. That's true as long as you have the right to exercise it. And your rights don't arise under the mortgage until you've got a default under the note. I don't think there's going to be any dispute. What case says what you just said? There's a United States Supreme Court case from 1910 that says the mortgage is incidental to the note. I would love to decide. And you can only utilize the note problem as opposed to the mortgage problem.  And I'll concede that the property law is going to be under Ohio law than it is United States Supreme Court. I thought there's a Sixth Circuit case that says that you can either be the holder of the note or the mortgage to bring this. I'm going to try to find what the name of the case is. This one I can cite to you. The case out of the 10th District State Court, Ohio, where this is located, is the George case. Judge Bruner wrote it, and she actually cites you all's decision, in this case for about a page, line by line, that you need both in order to foreclose. There's also an Ohio Supreme Court decision. I don't have a citation. Clark v. Lender. What do you think of that case? I'm sorry? Clark v. Lender Processing Services. I'm not familiar with that. Sixth Circuit case from 2014, under Ohio law, possession of either the note or the mortgage gives a party standing to foreclose. There's been – one of my faults was a problem with names of cases. But the Schwarzwald case was followed by the Kuchina, and there's a one after by Ohio Supreme Court. I don't know why the Sixth Circuit case says 2014, and I don't know the time frames for Ohio, but I can, with research, assure you that you need both in order to foreclose. What is the relationship between the California company that apparently held the note and the other parties at issue here? The Recon Trust? That is unclear as well. Their position is that Recon Trust held this note within their vault on behalf of several different entities. Well, there's an evidentiary base for that, right? A testimony. Okay. Yeah. What evidence do you have to the contrary? Okay. So what I have is the document that was filed before the state court and what that shows and what Ohio law requires that show. And the law requires a holder with rights to enforce that the note is made to the person in his actual possession. I don't think you're answering the question I asked you. Okay. The question is, what evidence do you have that it wasn't held on behalf of whoever your adversaries say it was held on behalf of? Well, I don't know how to answer that question exactly because it doesn't go to the issue of where we are with the- It goes to the issue I want to talk about. I understand. I don't know how to- The Recon Trust came out in 2016 as part of a deposition that we took of it. That it's making a lot of claims and there's a lot of testimony, but there's no written documents. There's no physical piece of paper from them that says here's precisely who we held it on behalf of on this date. So all they have is testimony and all I have is we'll prove it. Well, it's your burden to come forth with something that creates- Once they've presented some evidence, it's your burden to come forward with something that shows us there's a genuine issue of fact. Well, I would rely on then what they presented in front of the state court. And looking from that snapshot, I think is our burden as proven through that. Sorry. Where would we find the evidence in our record of what happened in state court? Well, both sides cite pretty extensively to it. In our motion for summary judgment- Argument or in- I'm just asking where in the record we go to look for- Motion for summary judgment. It's attached as exhibits. You don't know the exhibit number or you don't know whether it's a transcript. You don't know what it is. The documents- I'm not intending to ask you difficult questions. If you're familiar with a summary judgment record, then you know where the evidence you're relying on comes from. I mean, that's just- it's not about some big conclusive argument. It's about nitty-gritty and looking very closely at what is in the record and what permits what inference. I apologize. I do not know the exhibit numbers for the court. So your red light is on. If you wanted to sum up in one or two sentences the essence of your position, what is it? The essence of the position is the motion for summary judgment that was filed and granted in state court was based on completely fabricated documents. And that because of that, the Bank of BAC Home Loan Servicing did not have standing. It should never have won that case. My client should never have been as part of that lawsuit. Some other entity, probably Countrywide Home Loans, should have been the real party in interest there. Thank you. And can you start out telling us how many minutes each of you wants to take? Yes, Your Honor. My name is Brian Kuster. I represent Bank of America in this matter. Beside me- I will be taking 11 minutes. Beside me is Mr. Rick DeBlasius. He represents both Ms. Hill and Lerner Sampson Rothfuss. And we also have David Wallace. Both at the court's discretion, we plan to take 11 minutes for myself and two minutes for each of my colleagues. Fine. Thank you. Thank you. The order of the district court granting summary judgment should be upheld for three specific reasons. Number one, this court, in fact this panel, gave the district court a road map that stated, to be sure, Slorp's injuries will vanish if the defendants can prove that Bank of America was a legitimate mortgagee. That is exactly what we proved through the undisputed evidence. And that is what the district court found. Number two, the district court did not err in denying Mr. Slorp's summary judgment motion because he failed to support a single element of his RICO claim. The assignment was not false because Ms. Hill had the express written authority to execute it. And MERS could assign the mortgage regardless of the originating lender's status. Mr. Slorp failed to prove the existence of the predicate acts of mail or wire fraud. He failed to prove an enterprise, a pattern of racketeering activity, a nexus, and as we've discussed, he failed to prove an injury. And finally, all the issues that he's just raised here today is our final reason for why his claims fail because Mr. Slorp cannot amend his entire claim and his entire case by raising issues for the very first time in a motion for summary judgment. So let's discuss our first element. Bank of America was a legitimate mortgagee as proven by the evidence and found by the district court. Thus, his damages have vanished. So remind me, talk about the fraud that arose in the state court. Did the district court judge consider that and reject it, or what happened to that? Yes, Your Honor. In fact, the district court judge looked at these newfound claims that Mr. Slorp raised. And, in fact, let's jump to that because it's very interesting. Mr. Slorp used the motion for summary judgment to change the entire basis of his claim. Although he still used the assignment, now he's got these claims for the first time of multiple versions of the notes, this alleged manufacturer of documents, which he includes the Elangen. He also discusses that Bank of America and LSR obstructed justice and this alleged perjury. Well, I would point to you that this very court in Guffrey stated, to permit a party to amend their claim in an MSJ would subject the defendant to unfair surprise and smacks of gamesmanship not permitted by the court or by the civil rules. So just remind me, what did Judge Sargis, I just don't remember what he did with this. That seems to be his big point and I'm just trying to figure out what's going on. Well, Judge Sargis looked at these specific issues and the one issue that he looked at specifically was the ownership. Did he have to have ownership? And the district court held that BAC was not required to own the loan in order to enforce it because under Ohio law, the UCC does not define standing in terms of ownership, but whether one can enforce an instrument. Judge Sargis looked at this and said BAC had possession of the note as early as December of 2007 and therefore could in fact enforce the note. And because the mortgage follows the note, the foreclosure was proper. Further, the purported perjury and obstruction of justice claims occurred after the purported racketeering activity in the foreclosure action. So it's logically impossible for Mr. Slurp to have been damaged as a result. And finally, Mr. Slurp is asking that this honorable court leave its common sense at the door and try to convince you that legitimate mortgage litigation activities can form the basis for RICO's predicate acts of mail or wider fraud. However, the Eastern District of New York looked at this exact issue and said to allow legitimate litigation activities to be construed as the predicate acts of mail or wider fraud would turn every state court action into a RICO claim. So it seems to me that the two of you are talking about completely different things. He is saying that there's this fatal flaw in the allonge that it could not have been attached. What's your answer to that? Well, Your Honor, the allonge is a superfluous piece of paper at this point in time. So you agree then that the allonge was not attached. But you're saying it doesn't matter. Well, what we're saying, Your Honor, is that the testimony that's before this court is that the allonge itself is superfluous. And the testimony before this court is that the affidavit which testified to the allonge said it was a reproduction of a copy of the allonge and note as in Bank of America's system. It didn't say it was the original as in the vault. What does this allonge say anyway? It's basically a superfluous document because we already had possession of the note. We already had the assignment as we've discussed. But what does it say? You have to realize, at least speaking for myself, I am not an expert in this area. And when you start talking, I know French. But what does the allonge say? The allonge basically attests to the ownership, the holder status of the note. And, in fact, that didn't matter because what we have is testimony before this court that BAC was the holder. We actually have live testimony through depositions that BAC was the holder. We have live testimony of the note. Since December of 2007, which is far before the foreclosure was filed. Recon outfit testified that it had it in its vault on behalf of BAC. So we have Maria Gardner's testimony. And she testified to the fact that they were holding it on behalf of BAC. BAC was also the person on the assignment. And, Your Honor, you had it exactly right. It was Clark versus Lender Processing Services, which discusses the holder of the note or the assignee of the mortgage. You need one or the other. You don't need both. But we had both in this instance. One problem with that Clark case is I believe it is an F appendix case as opposed to an F third case. So it's not binding on us. It's just for its persuasive value. Correct, Your Honor. So why is that persuasive? It's persuasive because, Your Honor, we had possession of the note and we had both the assignment. So regardless of whether you wanted and or or, we had both. So whether the case you want to take it as persuasive or you want to take it as binding law, the fact is we had both. So if you want to look at the argument of Mr. Slorp and say you needed to have both, well, we did. So that's not a question before this Court now. Is there other authority besides the Clark case for the idea that you just need one or the other? Well, in this instance, Your Honor, we had both, so. All right. I think you're answering by indirection. Yeah. Well, according to my materials, there is some Ohio Court of Appeals case from 2012, city mortgage versus Patterson, that it's enough to have the mortgage or be the holder of the note. Yes, Your Honor. Is that a good case? I believe so. We had Mrs. Hill. Mrs. Hill had the authority to assign the assignment. And MERS, in fact, had the authority to execute the assignment. Excuse me. And MERS had the ability to assign the mortgage despite the originating lender status. I'd ask you to look at the terms of the mortgage itself. Mr. Slorp signed. It specifically allowed MERS to assign the mortgage because it was acting solely as nominee for lender and lender's assigns. And it's been unanimously held that an individual's employment status has no legal relevance to his or her authority to execute an assignment on behalf of MERS. Which brings us to our second major point, which was Mr. Slorp put forth no evidence of a RICO claim. You needed two or more predicate acts to create a pattern. But this court has held that a RICO claim predicated on a single victim with a single scheme for a single purpose is insufficient to create a pattern. Look to his amended complaint. We have a single mortgage, we have a single assignment, we have a single mortgage, and we have a single borrower. The evidence established that the purported predicate acts were completely unrelated and there was no opened or closed-end continuity. So we move on to this issue of enterprise. You need a purpose, a relationship, and longevity. Well, look at the relationship itself. This was a lawful contractual agreement between MERS and Lerner-Sampson-Rothfuss and BAC and Ms. Hill to allow her to execute the assignment, which is what she did. And for longevity, you needed a sufficient period of time. Well, Mr. Slorp admits in his own MSJ that this was but a short-lived period of time. So we don't have the longevity portion of an enterprise. So finally, we have to move on to a nexus. Well, we've already proven that you don't have the enterprise and you don't have the pattern, and the nexus requires a but-for or proximate causation. Well, the fact the assignment was executed did not lead to his injury. It was his decision not to make his mortgage payments, which is what led to the foreclosure. The parties were permitted to do what they did, which leads us to the injury. Well, there was no injury, as we've previously discussed. Slorp admits that the assignment for which the RICO claim is based didn't affect him at all. In his deposition, he admitted that it didn't change who the mortgage payment was sent to, that he had to make a mortgage payment in the first place, and it didn't cause him to fall behind. In fact, when asked what impact it had on him, he said, nothing, life is great. So in conclusion, BAC was a legitimate mortgagee and holder of the note. We were able to enforce the note. There was no evidence of a RICO violation, and changing one's claim in an MSJ is impermissible and not allowed because it smacks of gamesmanship, not permitted by the courts or the civil rules. I hate to ask this question, but you're talking about BAC. I thought you were Bank of America N.A. Yes, Your Honor, but BAC merged into Bank of America. There's an umbrella here. Would you like me to explain that? Do we have a launch division? If you would like to edify me in one sentence how BAC merged into BANA. There was countrywide home loan servicing. They did a name change into BAC. Then there was countrywide FSB. They merged into BANA. Then at a later time, all of them merged up into BANA. They are all, at various points in time, part of BANA. In the earlier days, they were subsidiaries thereof. They are all under the BANA umbrella, if that helps you out. It does. Thank you.  Good afternoon. May it please the Court. My name is Rick DeBlasius, and I represent the defendant appellees, Lerner, Sampson, and Rothfuss, which you've heard referred to today as LSR on occasion, and Shelley Hill. The very first thing I want to do with my limited time is to describe to the Court what an allonge is. Thank you. An allonge is merely a piece of paper that contains an endorsement. It was originally used because there might have been multiple endorsements on the back of a promissory note, and you were out of room. So you stapled another piece to it and continued to endorse it. And that document is called an allonge. An allonge, and in this case, so there... An allonge needed in this case? There wasn't an allonge needed in this case. But at some point, somebody didn't know that because they hadn't seen the original note from the vault. Okay?  Somebody has written to me a check, and I want to make it payable to you because I owe you a debt. So I'm going to get the check, but in the meantime, I'm going to give you a promissory note. Or not a note, but an endorsement that says, I will assign this check over to you. Then I find the original check, and guess what? It already contains an endorsement on the back. So I give you the original check, and the allonge becomes inconsequential. Because the endorsement was identical to the allonge? Well, in this case, it wasn't. In this case, the allonge was in blank. I'm sorry. I misspoke. On the original note, the last endorsement was in blank, which makes it bearer paper. If you endorse the back of a check and you say, pay to the order of, and you leave a blank, and I give you the check, it's a negotiable instrument. It now becomes your money or whoever, if you want to give it to Judge Sutton, as long as it's in blank, it is completely negotiable. It's bearer paper. And that's what this note is. The point is, there weren't enough endorsements on the back of this note to need an allonge. Is that the point or not? That's right. I mean, as the practice of allonge has developed, they're no longer used only when there's no room on the back of a note. Oftentimes, you can find no endorsements on the note, but an allonge staple to it. That is very frequently the occurrence in commercial practice. And so in this case, there was an allonge. Now, Mr. Slorp says the foreclosure was fraudulent. But then he says, oh, well, maybe the foreclosure was okay, but years later or much later during a motion for summary judgment on the foreclosure, this allonge appears. As it turns out, this case was predicated. And Mr. Slorp says his damages occurred. And this court said his damages would vanish if it turns out the Bank of America was the proper mortgagee to bring the foreclosure. What does that have to do with the allonge that appears later in summary judgment proceedings, which, as we've discussed, is a superfluous document? The question is, on the day the foreclosure was filed, did BAC have the right to bring it? And they did. Talk about indisputable evidence here. The indisputable evidence, I'm sorry, I see my time is up. That's all right. If you can just finish this thought, that would be good. Thank you, Your Honor. The indisputable evidence is that Mr. Slorp took out this mortgage loan. The indisputable evidence is that BAC became the holder of that mortgage loan. It's in the record. It is the affidavit of Susan Magadino that was attached to Bank of America's motion for summary judgment, which is document 121-1, and it starts about paragraph 5, where Susan Magadino testifies it has not been disputed by any evidence in the case where this note went. The original placed in the vault. The vault became the possession of BAC. The note went into default. That's what caused the foreclosure, not some nefarious scheme among these entities. What caused the foreclosure indisputably is that Mr. Slorp stopped making his mortgage payments. BAC had possession of the note. It was endorsed in blank, bare paper. They had the mortgage because Ms. Hill, on behalf of MERS, executed the assignment to BAC. BAC brought the foreclosure. It's exactly as this court said. If you do not have damage as a result of the conduct of the defendants, then you do not have standing to bring a case in this federal court. He may have had damage, but damage arose by his own default in payments, not anything the defendants did. Thank you. Thank you, Your Honors. Good afternoon, Your Honors. My name is David Wallace. I'm here on behalf of Mortgage Electronic Registration Systems. As noted by my colleagues, this court's prior decision stated that if BAC was the legitimate mortgagee, then Slorp's injury and his RICO claim vanish. Stated a little bit differently, if the assignment was not falsely executed to improperly foreclose on Mr. Slorp's property, there's no RICO claim here. And the record established that MERS properly assigned the mortgage and that the assignment of mortgage wasn't false. So first, MERS had the authority to sign the mortgage. MERS's authority to assign came right from the language of the mortgage, which Mr. Slorp signed. This court, in a couple of appendix decisions, has acknowledged that that very same language that was in the Slorp mortgage that was contained in others, grants MERS powers that include the power to assign mortgages. In addition, Shelley Hill, the person who actually signed the assignment on behalf of MERS as its signing officer, also had authority. We put in the record the agreement for signing authority, which gave her the authority generally, and then the corporate resolution from MERS, which specifically granted her powers, including the power to assign mortgages. So Ms. Hill had the power and the authority to assign the mortgage here. The fact that the original mortgage lender named in the mortgage had merged into a different entity doesn't make any difference. Courts across the country, and we've cited several of the cases in our brief, have acknowledged that that broad language in the mortgage grants that power to assign, even in circumstances where the initial lender is defunct or if the successor lender hasn't specifically authorized it. In fact, this court in the Kumar case that we've described in dicta sort of suggested that that argument seemed dubious to at least that panel. Since the assignment was proper, there's no factual or legal basis for RICO liability against MERS, based on the assignment of the mortgage. There was no evidence of a conspiracy to draft a false assignment in this case. There was no evidence of any predicate or criminal acts in this case, and there was simply no evidence presented at all of any false mortgage assignments that were used in other cases to wrongfully obtain property through foreclosure. So none of the issues and allegations that this court had to credit in the underlying case that this court heard before have ever been proven, and in fact, as the court suggested, the defendants could rebut those allegations, and we have done that. There is simply no basis in fact or law for a different decision than what the district court decided below, and we respectfully request that the court affirm the judgment. Thank you. Thank you, Your Honors. There's a little bit to unpack there, but I'll start with the ‑‑ I'll just rest on what we've argued in the briefs regarding MERS, Shelly Hill's authority, ability to sign on behalf of MERS. There's a particular document that does give her some ability to sign on behalf of MERS, but that right there in the document, you don't have to read any further in the document, says that she has the ability to act on behalf of BAC, not on behalf of Countrywide to transfer stuff over to BAC. So they're confusing a little bit of agency law there, but I'll rest with what we have briefed on that. I would tend to concur with most of Mr. de Blas's presentation of what an allonge is as well. It's basically another sheet of paper with an endorsement. Similarly on a check, if I made out a check to you and you wanted to pass it along to somebody else, you can flip it over, you endorse it, you just sign your name, it's in blank, and anybody can cash it. Similarly with notes and mortgage notes is that at the end of the note, there's a bunch of endorsements on it. The presentation of this document to the trial court is important because it didn't have any endorsements on it. It had nothing on it. So just like a check, if it's made out to me, I'm the only one who can cash it, without any endorsements, nobody else can cash that thing. So they recognize that problem. Summary judgment's coming along. I have a document not endorsed. I can't cash it. I can't enforce it as a plaintiff. I need to get it over to somebody else. I don't have the original document, so let me manufacture an allonge. We'll stamp it on the back here. Now we're transferring it to the plaintiff. The problem is under Ohio law, that must be, it's absolutely required to be physically attached to the original. We heard Mr. de Blas's admit that it was not attached to it. So why are they filing it? And you've got a trial court judge who is receiving this document with an affidavit saying this is true and accurate, a copy of the original, and they're granting judgment on it. And this was the state court? This is the state court, yes. And then finally, after four years of litigation, we unwind this whole thing through discovery and the evidence attached to the summary judgment and the depositions. We unwind it all, and now they come out with this new document that has three endorsements on the note itself saying, oh, these things were always there, so we always had standing to be there. It's like if those three things were always on that document, then why not present that back here? And the logical conclusion for us is if they're willing to commit perjury in submitting a document to the trial court with this allonge, then how can we trust them today that the endorsements are what they purport to be? Aren't trial judges supposed to figure out perjury-type things? Well, you know, I think maybe this gets into a little bit of genuine issue material fact here. I don't think there's a debate between the two. I would certainly appreciate a trial court looking at that from a lens of perjury. And it's frustrating for me as a practitioner of this all day long. This is not something that is unique to this case for me. I mean, the evidentiary degree that we have evidence here is unique. But this is, I mean, as a practitioner in this practice area, this is what robo-signing is all about. This is why the banks are paying billions upon billions of dollars out in fines. It's because of this stuff. Now, one question that I believe was involved in this case was how did you seek to raise this matter? Did you seek to raise it by a motion to amend your complaint, or did you seek to raise it by a response on summary judgment? Another good question. First, I think our complaint is encompassing enough. It's pretty long. It certainly says they don't have standing to bring the lawsuit at all. In our complaint, we don't get into the specific allegation that says this allonge was false. And the reason why we didn't get into it is because we didn't know about it until 2016, a couple years afterwards. So it's a new matter, and how did you try to raise it? Did you try to raise it through your response to the summary judgment motion, or did you seek to amend your complaint to add it? So what we did was we added it. It was in our summary judgment motion, and it was certainly in our reply as well. But it's within the same umbrella. So what this court said before was we need to, you know, certainly if they can prove standing, then our claim goes away. So there are several different ways that we can attack their standing. One of ways is the mortgage. The other way is through the note. So the umbrella is the same, and not to mention, as I said, that we didn't even know about all these nitty-gritty details until multiple years in litigation, after the case was remanded back and we got into it. We didn't feel it was necessary to amend the complaint in order for this to be covered. And quite frankly, we felt like there was enough here already for the trial court to make a decision on the merits. And what did the district court say? Did the district court say that you should have raised it through a motion to amend, or did the district court not address this, or what? To my recollection, the district court did not say you should have raised it in a motion to amend, but rather I know what the focus was on it, was that the Bank of America, and the decision will speak for itself, but I know that the focus was on Bank of America being the real party in interest through these three endorsements. And even the trial court gets confused quite a bit and keeps referencing BANA as the true party interest, BANA, BANA, BANA, when really it's BAC. Even the trial court is saying BAC didn't have standing because it's all about BANA, not because there's a lot of confusion with that. And when you say the trial court, you're talking about the district court? District court, yes, Your Honor. Well, I see your red light is on, too. So thank you all for your argument, and the case will be submitted.